Thank you, Your Honor. May it please the Court, Counsel, I'm Don Harris and I'm pleased and honored to be here today representing Lana Robertson. Lana is a wife, a mother of two, and she's dying of systemic sclerosis. And just so you know, the timing ground rules, I'm going to unilaterally, as the presiding judge here, add five minutes of time to each side. So if you want to take 15 minutes to start and save five for a puddle, you could do that. Thank you. I shall do that, Your Honor. But no one's required to use up all their time. So if you're done, you don't have to. Okay. She's going to die of this horrible disease unless she gets a stem cell transplant. And the wonderful thing about this transplant is for patients like Lana, it is safe and proven treatment. What do I mean by that? It has a 70% to 80% track record of not only halting this disease, but causing it to go on to remission. It has an 80% survival rate after five years. It has a relapse-free survival rate of nearly 70%. And the mortality rate from the treatment is less than 10%. Keep in mind that this is a disease that without a stem cell transplant will kill Lana. It is fatal. So it's safe and proven. It's cost effective. Do you disagree that the treatment that was at issue here was provided as part of a clinical trial or research study? I do not. Okay. So the language of the plans is treatment provided as part of a clinical trial or research study is experimental slash investigational. So your position is that we shouldn't give effect to that language or that language should be read in a context or otherwise understood so it doesn't mean what it actually says. Is that correct? You know, I think that is – if you interpret that sentence broadly, then I think that it contradicts the other part of the definition. And I also think that it violates ERISA. I mean, there's an ERISA regulation that says, it's in Regulation 2560, that says that if the adverse benefit determination is based on medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances or statement that such explanation will be provided free of charge has to be given. So what ERISA is literally saying is that when it comes to experimental investigational treatment, it is not enough to have a corporate policy that's not part of the plan that says that you can't cover this. I thought that language was part of the plan, the language that I just read. It is. And one of the errors that the district court made is that when Blue Cross Blue Shield denied this claim, it did it not based upon the plan language. It did it based upon the HCSC, Healthcare Services Corporation, medical policy. Your Honor, if you look at the first two decisions denying this plan, they don't talk about any of the plan language. I thought the second letter at least did indicate that it was denied because it was part of a Phase III randomized clinical trial and therefore considered investigational, but that was in the December 19th letter. Yes, and if you go down just a little bit further, it says criterion for making this judgment. The criterion is the HCSC medical policy, but my view of the definition is it wouldn't make any sense to allow safe, proven, and effective treatment, not that it will just save Lana's life, but save the plan money to be excluded when it's standard medical treatment for this condition that Lana has, when there's no other treatment. It would make no sense to do that. It would be like saying if somebody somewhere does a research trial or a clinical trial, for example, well, let's take the ASSIST-2 trial. That was to determine whether the drug therapy or whether the stem cell transplant was more effective than the drug therapy. They didn't exclude coverage for the drug therapy. They covered them both, even though both were part of a clinical trial. What if a researcher somewhere said what we want to do is we want to study whether CAT scans or MRIs are more effective for diagnosing a situation? We want to study that. There's no end to places to medical research on these issues. Would that mean that both CAT scans and MRIs are no longer covered under the plan just because they're being studied? If the treatment that had been proposed for Ms. Robertson had not been part of a clinical trial or a research study, would it have been covered? Well, we didn't get to that question. But here it was proposed as part of a clinical trial or research study. So it isn't like an MRI, right? It's some treatment that was proposed as part of a clinical trial or research study. Yes, a Phase III trial. And remember, the ASSIST-1 said it's effective. ASSIST-2 said it's more effective than the standard drug therapy. ASSIST-3 was trying to see if we can make it even more effective by giving less toxic drugs when we do the stem cell transplant. So if it had been proposed as something not part of a clinical research trial, just on its own as medical treatment, would it have been covered by the plan in your view? It should have been, yes. So the problem here was that the treatment that was actually proposed for your client was part of a trial, a clinical trial. Is that it? Yes, according to Blue Cross Blue Shield. And so why was it proposed as part of a clinical trial as opposed to just standard medical treatment? Because it's so rare. And one of the things that they try to do, they get funding to do these clinical trials. And that's one of the reasons states like Texas don't allow exclusions because treatment is given through a clinical trial. Some of these diseases are so rare that when they get funding to study these things, they can only do it if they do it through a clinical trial. Now they can do it on a compassionate basis, but Dr. Burt said I think you should be part of this clinical trial. Well, because when we study you and we do this sort of thing, it helps everybody. And speaking of the ASSIST-2 trial, I just want to point out, because sometimes this is lost, this stem cell transplant is so effective that in the ASSIST-2 trial, 10 had the stem cell, 9 had the drug treatment. The 9 didn't respond to the drug treatment. All of the people with a stem cell transplant responded. So after the study was over, all of the people that got the standard drug therapy got the stem cell transplants, and they were all helped. That's how effective this is. That's how effective. I think that the district court just got it wrong. Let me pose this question to you. I can see that since it's ASSIST-3 and it's been through a couple of other trials and proven itself well, it seems reasonable to say that it's not really fully experimental now. But why isn't it investigational if it's part of a clinical trial where they gather information and it's for the benefit of more study? I think it is investigational. I think that is what they're doing. So the issue is, is can this plan construe a definition as an exclusion instead of construing the definition consistent with what the rest of the definition says? They don't argue. Blue Cross Blue Shield, Stallion doesn't argue that but for that last sentence, this isn't standard medical treatment. Then they have this, what they basically do is they define clinical trials as experimental and investigational, and then they call it an exclusion. They don't put it in their plan with the 43 other exclusions or limitations. They bury it in this definition. And then how do they explain the fact that in Illinois and Texas, this same company, HCSC, covers this very procedure? Now, the district court said, well, listen, you didn't present the insurance policies and so forth. But under ERISA law, once Lana doing this all on her own, this courageous woman, all on her own, submits all of these letters and documents and information from other claimants saying, listen, you're covering this in other states. You're even covering it in Illinois, which is an HCSC corporation, part of their corporation. Does the plan have the same wording in those other plans? We don't know, and that's the point I wanted to get to. So you don't have copies of those plans or you haven't? So you don't know whether they're covering it with language that's the same as the language before us, is that correct? That's correct. But under ERISA, what they're supposed to do is when she presents that information, they're supposed to investigate. They can't hide behind it. She doesn't have the information. They do. It's their company. They can't hide behind the fact that this poor woman can't get all of the plan information that they already have, which brings me to one last thing. And then I'll sit down because I want to have some rebuttal unless you have other questions. You're going to hear these people come up and say, our hands are tied. We have a fiduciary due to the other policyholders. Well, this is going to save the plan money because Lana is going to have frequent hospitalizations and hundreds of thousands of dollars in medical bills before she dies a miserable death. And under their plan, they have an out. We cite it in our brief. I can't locate it right here. I'll have it in rebuttal. But it basically says the claims administrator here has the flexibility to cover things that otherwise aren't covered. We can do it. What are the circumstances? It's safe and proven. It saves the plan money and everybody agrees to it. Those are the criteria. Why didn't they tell Lana about that? And why didn't they tell Lana that she had the right to appeal this Blue Cross Blue Shield decision to Stallion, which they never told her? I saw that in your brief, but where does that obligation come from, that they would have to tell her that she could appeal to Stallion? Oh, under the regulations. The regulations require them to set forth what the appeal procedures are, and they misled her. They said that when MRIs gave their letter, they said this is it, this is the final thing, and yet the actual health plan document says, nope, you have a final appeal to Stallion, and they didn't tell her that. Are you saying that her claim is not exhausted because she has another appeal, another level of appeal? No, it was exhausted. Oh, that's a tough question. Had she known about it, she would have done it, but she didn't know about it. And certainly nobody can blame Lana for not knowing that she could have appealed to Stallion before she filed suit because they told her this is it, it's final, your only remedy is to go to court, and that's what she did. I would like to save at least a couple minutes for rebuttal if there are no further questions. Thank you. Thank you. Okay, now we've got Mr. Collis. Yes, Your Honor, Stephen Collis on behalf of Stallion Oilfield Holdings, and if you don't mind, I'm going to see if I can find the switch here. We'll hold it. I'm struggling to find it, so maybe I can. We'll hold on to time until the clerk helps you get the stand up a little bit. There are benefits to being tall, but yeah, that's great. Thank you. Yes, Judge Gould, Stephen Collis on behalf of Stallion Oilfield Holdings, and we will split our time here. I'll just say that we'll give appellees also 20 minutes, so you can take 10 minutes each. Great. Thank you, Your Honor. You know, as Judge Malloy's opinion made abundantly clear, it's unfortunate, but at the end of the day, the parties are bound here by the text of this plan, and no matter what logical path you follow in this case, you always end up hitting the same roadblock, which is the plain text of this plan does not allow treatment that is part of a clinical trial, and this treatment in this case that Ms. Robertson is seeking is clearly part of a clinical trial. No one disputes that whatsoever, so the treatment is excluded, and there's absolutely no way around that plain text. It's unambiguous, and that's what Judge Malloy held, and that's why we're asking this Court to affirm his decision. I would say as to the issue of standard of review, because the text is so clear, I know the standard of review issue is a little bit loose in this case and undefined, but I don't even think the Court needs to get there. You can exercise, if there's an opportunity to exercise just judicial restraint, this is it, because I don't think you need to answer that question because the text is so clear. Whether you pursue an abusive discretion analysis or a de novo analysis, you end up at the exact same roadblock that I described of the text prohibiting or excluding this type of coverage, and there's really no way around that. This plan is not – the benefits that Robertson is seeking aren't paid by Blue Cross, right? It's administering the claims, but it's not funding the payout. That's correct, Your Honor. So Blue Cross Blue Shield has no conflict of interest whatsoever. This is a self-funded plan. Stallion has delegated to Blue Cross Blue Shield the authority to decide claims. Blue Cross makes the decision, and then Stallion pays based on whatever decision Blue Cross makes. Okay, so it doesn't get kicked up to de novo review from a conflict of interest at Blue Cross, most likely, but how do you deal with the argument by appellant that there's a problem because Robertson wasn't told that she could appeal to your client? I think you go back to your question that you asked. There is no legal obligation on the behalf of the claims administrator to notify a claimant that there is some other internal appeal procedure. ERISA mandates that they notify the claimant of their right to bring an appeal in court, and the claims administrator met its obligation there in this case. The fact that there may have been an option to appeal to Stallion doesn't create a legal obligation on the part of the claims administrator to notify the claimant that, hey, you can also appeal to Stallion if you like. The important part that's mandated by ERISA is that you let them know they have appellate rights in the courts, and the claims administrator met that right. So under ERISA, Ms. Robertson is allowed to appeal the decision, which she has done, and that's why we're here today. And so I would say that the claims administrator met its obligations. We're here. She's getting her case heard and reviewed, and it doesn't affect the standard of review simply because they didn't notify her of the right to appeal to Stallion. Is there an appeal procedure in place for appeals to Stallion? There is some language to that effect in the document. There is not a formal appeal procedure in place. To be honest with you, Judge Ikuda, I think the language is more an opportunity for the plan administrator, and you see this regularly in ERISA cases, for the plan administrator to still have some control over its plan. And if it decides a claim administrator is not performing how it would like, it can always switch to a different claims administrator. There's a number of insurance companies out here that act as claims administrators. So I think that's really where this notion of an appeal at the Stallion comes from. For all practical purposes, no appeal has ever actually happened directly from the claims administrator to Stallion, and so there really isn't a direct process in place. Other than that, there is language that says a claimant may appeal to Stallion if he or she so chooses. But you agree that her claims are exhausted here? For ERISA purposes, yes. Her claims are exhausted. She exhausted the administrative process, and the next step, generally speaking, is to appeal to a district court, which she did. If I could, I'd like to touch just a little bit on some of Plaintiff's arguments regarding the ERISA regulations. ERISA nowhere mandates what benefits are or should and should not be provided. An employer can provide whatever benefits it would like to its employees, whether they be great or little, and ERISA mandates really how those benefits are then handled and how claims procedures are handled. So there's nothing in the ERISA regulations that says you must provide a treatment if it's been proven, which I think is still a disputed fact in this case. But the reality is this treatment just is not provided. It is one benefit that Ms. Robertson would like, and I 100% understand why, but it's just a benefit that's not provided under the plan, and nothing in the ERISA regulations mandates that it be provided. If Blue Cross Blue Shield were to provide or, excuse me, if Blue Cross Blue Shield as the claims administrator were to mandate that this be provided, because the situation is so sympathetic, and I understand that it is, what would happen is Stallion would be using self-funded plan money to pay for it, and they would be in violation of ERISA because they'd be providing benefits that aren't provided. If they did that too often, what would happen is that someone would come along seeking a benefit that is provided, and the plan would not have the resources to pay for it. It might be it's just as sympathetic a situation, and it is covered, but the plan, if it's not careful, will end up violating its fiduciary duties and not having the resources to pay for things that are covered. So opposing counsel says that there's flexibility in the plan so that there can be a decision to provide additional benefits under certain circumstances. Why isn't that applicable here? Because I think the exclusion here is so clear. I think that gives some discretion where you're looking at medical necessity and other questions for things that are actually covered, but in this case this is just clearly not covered whatsoever. She could be seeking something that's just absolutely not covered. I'm trying to think of an example that's not too silly, but the reality is that the exclusion in the language is so clear that this type of treatment is not covered, that there really is no other discretionary authority, or I shouldn't say that, there really is no other avenue in the plan by which you can come back to it and somehow get there. Another thing I'd like to point out that I think gets confused in the briefing and was brought up again today in our argument, plaintiff's counsel has made much of the notion that the initial decision was based on this internal medical policy and continues to refer to that. It's important to remember that the initial denial was based on the internal medical policy and how that fits into the experimental investigational definition. Ms. Robertson appealed. There was a second denial letter. That one referenced the clinical trial, and then it also referenced this internal policy. Then there was a third appeal, or a second appeal that resulted in a third denial. That one is the decision that clearly based the language on the clinical trial exception. The appeal that came up out of that administrative process to the district court takes into account that third denial that is based on the clinical trial exception. So plaintiff's counsel is spending a lot of time arguing about this internal medical policy and how no one should have relied on it, but the reality is the decision that is being appealed is based on this plain language that says clinical trial treatment is not covered. That's what was appealed to the district court, and that's what's being appealed today. So at the end of the day, the administrative process fleshed out exactly why this was not covered, and it's that whole process that was fleshed out that is being appealed, and it's important to remember that you have to take into account the entire administrative process, not just the initial claims decision. Finally, I would point out you can see in the administrative record in a number of places that this treatment is not clearly as black and white as plaintiff's counsel is claiming today. Even Dr. Burt acknowledged that it's still experimental. Judge Malloy acknowledged that it is not necessarily the standard of care for this particular illness. The treatment, the clinical trial that it is in is really only this phase of it is only halfway through. It extends all the way to 2018. So there is still a lot of time and investigation that has to happen in this clinical trial before this treatment is considered standard of care, if it ever gets there. And the reality is I don't think we can just assume and make a blanket assumption that this is definitely going to cure her. The reality is we just don't know that because it is still being investigated. So if her doctor had recommended this not as part of a clinical trial but just as a standalone treatment, what would have been the result? I think then, well, I would query whether or not it's still considered part of a clinical trial since it is largely in a clinical trial. But let's assume for your hypothetical sake that it's not part of a clinical trial and it's just being given as treatment. Then you would be out of that last sentence of the definition and you would apply the whole definition of what is experimental investigational. That is what Blue Cross Blue Shield did when they applied their medical policy. That internal medical policy had already examined this and had already analyzed whether or not this fit that definition. So they were able to just apply that policy. They don't have to redo the entire analysis every time someone comes asking for a treatment like this. Once they do it, they can look back at the research they've already done. And if you look at that internal medical policy, you'll see that it follows very carefully the definition of experimental investigational and looks into all of the same things that that definition requires you to look at. So arguably, at least, Your Honor, I think you would end up with the same result. But my co-counsel here, who I'm going to defer to now, can address that probably in more detail. Thank you. Thank you. May it please the Court. My name is... One second. Rebecca, perhaps you could lower the stand a little. Sure. Thank you, Stacy. So I thought, Rebecca, I should say, Ms. Hanson, that you would like that more. Thank you, Your Honor. I do. I very much do. May it please the Court. My name is Rebecca Hanson, and I represent Blue Cross and Blue Shield of Texas in this matter. Blue Cross and Blue Shield of Texas agrees with Stallion that the plan language here does not provide coverage for the treatment that Mrs. Robertson seeks. It is indisputable that the treatment she seeks is part of a clinical trial. And the plan says treatment provided as part of a clinical trial is experimental investigational. And the plan goes on to exclude experimental investigational treatment from coverage in the plan. The plan's language is dispositive of all the issues in this case. Now, it is also indisputable, I think, that this is a heartbreaking case, but Blue Cross and Blue Shield, unfortunately, has no other option but to deny Mrs. Robertson's request for treatment. In fact, it has a fiduciary responsibility to Stallion and to every other member of the plan, including Mrs. Robertson. It's not just the individual claimant that Blue Cross and Blue Shield of Texas needs to consider in this case, but all members of the plan. Now, the decision that Blue Cross and Blue Shield of Texas came to does not bar Mrs. Robertson from having the treatment. As opposing counsel stated, there is a compassionate basis that the hospital could provide the treatment for her. That is not disrupting the other members of the plan and the benefits that they might have available to them. So there is another option in this case. Is that still up in the air? I mean, can that still happen? I do not know, Your Honor. I think that might be a question for opposing counsel. He did bring it up, and I raise it here because Blue Cross and Blue Shield of Texas has to consider all the members of the plan, but if the hospital has a study and they have funds for the study, why can't those funds be applied to Mrs. Robertson without her needing her insurance to cover it or her health plan to cover it? Now, this court has routinely upheld district court decisions where claims administrators had decided that a treatment was experimental and investigational and therefore not covered by the plan. In Parsons v. Sisters of Charity Leavenworth Hospital Systems, for example, the same treatment was at issue. In that case, the treatment was experimental, investigational under the plan and therefore excluded. And here you've raised the issue, Judge Yakuta, about whether or not the treatment would be experimental, investigational regardless of the fact of whether it's in a clinical trial or not. And here I think Judge Malloy pointed out very clearly that this is not the standard of treatment, and Dr. Burt, the doctor administrating the treatment, has said that himself. It's not the standard of treatment. And the definition of experimental, investigational in the plan says that if it's not standard of treatment, standard medical treatment, that it's experimental, investigational and not covered. Standard medical treatment are expensive, ineffective drugs? Excuse me, Your Honor? Is the standard medical treatment administering ineffective and expensive drugs? Well, while the definition of experimental, investigational in the plan, it does account for the fact that a treatment may be last resort. And what you're getting at is that Mrs. Robertson appears to be resistant to the drugs that are the standard of care. That does not mean that an alternative treatment becomes the standard medical care for that situation. Yes, she is resistant to the drug according to the record, but just because this treatment is the treatment of last resort for her does not mean that it is covered by the plan. And how many trials does something have to go through before it can be considered a standard medical treatment? Well, I think that I can't answer that particular question, Your Honor, but I can say that in this case the record shows that the literature, the peer-reviewed medical literature is saying that it's not ready. It's not there yet. So this trial was approved by the FDA, correct? That is correct. But if Dr. Smith, for example, said, I'm going to do this procedure but not in a clinical trial approved by the FDA, could that be done now? I believe that the literature that was put before Blue Cross and Blue Shield of Texas shows that this treatment is still investigational. It is still there's treatment-related mortality that Judge Molloy pointed out. It's that it's still in process, that they haven't accepted it as the standard care for this situation. And it's actually, Judge Molloy also pointed out that it's not in general use in the medical community, and I understand that it's not an occurrence that happens all the time, but still it's not in general use. It's in the clinical trial. It is still being investigated, and the literature says more studies are needed, for example. So I don't know how many more, but the literature is clear that it's not there yet. Okay, thank you. So in Parsons, also the court declined to address the standard of review issue because the language was so clear, and as Counselor Verstallian mentioned, I think that is the case here as well, that the plan language does not allow for treatment as part of a clinical trial under either standard of review. It's either it just is not covered by the plan. So the court does not need to address that issue. And whether or not in applying the abuse of discretion standard, it is clear from the plan language that Blue Cross and Blue Shield of Texas was given the discretion to determine whether a treatment is experimental or investigational. And, in fact, that language is part of the experimental-investigational definition. It says that the claims administrator will decide what is experimental-investigational. And the cases say that there should be no reason for anyone to divine whether discretion was granted, and here we don't have to guess as to whether or not Blue Cross and Blue Shield of Texas was granted discretion. Opposing counsel submitted a sign of stipulation on behalf of his client that said that Blue Cross and Blue Shield of Texas was granted the discretion. Now, on the issue of whether or not Blue Cross and Blue Shield of Texas informed Mrs. Robertson about her appeal rights to Stallion, in the letter, the November 13, 2013 letter, which is in Blue Cross and Blue Shield of Texas's supplemental record of 30 and 31, it does inform the member that their benefit booklet has information about appeals and that that is an indicator that there are appeal rights that aren't otherwise explained in the letter. And that language about an ability to appeal to Stallion is in the benefit booklet, which is noted here. And then also in the December 19 letter, actually, I think it was a July 2014 letter. I don't have the record number. I grabbed the wrong letter. But in that, oh, I do have it. It's in Blue Cross and Blue Shield of Texas's supplemental record at 28 and 29, which is a letter to Mrs. Robertson's attorney, which the last decision was made in February, and so here we are in July. And they inform Mrs. Robertson's attorney that they can contact Stallion to determine whether there are any other options, discuss any additional options, is what it says. And so, you know, while there's no obligation, and while Blue Cross and Blue Shield of Texas informed Mrs. Robertson about her ERISA appeal rights, I think that if there was some other obligation to inform her about other appeal rights outside of the ERISA rights, that this substantially complies with that because we pointed her to where the language is, told her that Stallion may have additional options for her. So that issue is addressed by that. Now, opposing counsel has referred to the treatment as, or excuse me, he sort of blanketed all of Blue Cross with my client, but my client is Blue Cross and Blue Shield of Texas and is part of Healthcare Service Corporation, which is, again, not all Blue Cross. There are many other Blue Cross and Blue Shield entities. My client is Blue Cross and Blue Shield of Texas, and Healthcare Service Corporation does cover Illinois, but the many letters and other things that opposing counsel was referring to in terms of other plans that cover this treatment, they are not Blue Cross and Blue Shield of Texas, and they are not Healthcare Service Corporation. So they, and again, we do not know the plan language involved in those cases, but the question is, do we need to know? Blue Cross and Blue Shield of Texas had enough information before it to employ the clear language of the plan, and the plan excludes treatment that is part of a clinical trial, and here they did not need to look at other plan language or determine what other plans were doing because the language was so clear, and the evidence before it clearly indicated that there was a trial and clearly indicated that the treatment was experimental and investigational. Do you have no further questions? That's all I have. I don't. Any questions? Thank you. Stacy, by the way, Stacy, did we add the time? Okay, Mr. Harris, now, we didn't mean to put pressure on you by adding the extra time, so you don't have to use it all up, but if you want it, you've got it. I appreciate it, Your Honor. Thank you. I've never been in a position where I've argued for somebody's life before. In terms of flexibility, if the court will look at Stallion, the excerpt of Record 62, what it says about them covering uncovered expenses, it says, under certain circumstances, the plan allows the claims administrator the flexibility to offer benefits for expenses which are not otherwise eligible expenses. The claims administrator at sole discretion may offer such benefits if, one, the participant, his family, and the physician agree, two, the benefits are cost effective, and three, the claims administrator anticipates future expenditures for eligible expenses which may be reduced by such benefits. Oh, my goodness. So did you pursue that and they denied a claim under that discretionary language? No, we did not, and here's why. When Lana first appealed, she thought this was a medical necessity issue. The first two decisions didn't cite the plan language. It was just the third decision, the decision that was tacked on, the reason that was tacked on that the district court seized upon, saying that this was an exclusion. She thought it was a medical necessity issue. Had she known about it earlier, what she might have said, well, why don't you make an exception for me? You've made an exception for six people in Illinois that have this disease. They ambushed her. So opposing counsel also indicated that the hospital, or suggested that these sorts of equities could be argued to the hospital that's running the clinical trials. Is that something that has been done? Yes, thank you. She needs $125,000. They won't do it for free. She was on Medicare, Medicaid. She was in nine other states with Blue Cross Blue Shield providers. If she was Cigna, if she was Anthem, if she was Blue Cross for the federal employees, she would be living, she would get this coverage. But she falls through the cracks. She doesn't have the money, she can't raise the money, and without this procedure she's going to die. So opposing counsel, I think, or maybe it was in your brief, was saying that she had a funding, she was attempting to fund this on the Internet. Yeah, yeah, she went online to try to raise money. It was totally unsuccessful. It's $125,000. Standard treatment, when the district court says, noted that this was, he talked about Judge Molloy saying that this wasn't standard treatment. If you go back and look at what Dr. Burt wrote, he acknowledged that there is no standard treatment for systemic sclerosis, that what they try to do is stem the tide with drug therapy to begin with, and then if that doesn't work, this is the standard treatment. This is the gold standard. And when they say it's not- Did the doctor put that information into the record, that this was standard treatment? No, he said there is no standard treatment. He said the first line therapy is drug therapy to try to stem the tide. If that doesn't work, this becomes the standard treatment. Did he say that this is the standard treatment because the drugs have failed? Yes. And where is that in the record? We've cited it in our brief. I didn't write it down, but we've cited it in our brief. In fact, some of the studies that they're doing now are arguing that this should become the first-line treatment instead of the drug therapy because the drug therapy has so little evidence of its effectiveness. They say that Lana has to live and die by the plan. I agree. She needs to live or die by the plan. But the plan, under the plan she lives. One of the things that they're doing here, and what the judge did, and it's a temptation, there is a huge difference between a definition and an exclusion. I get exclusions. And if they had tried to put this exclusion in this plan, our response would have been, can't do it. URASA doesn't allow you to do it. Why? Because for experimental investigational treatment, you have to get a medical judgment and apply it to the claimant's individual medical circumstances. They did not do that here. They denied it summarily based upon, and it's a stretch to call this a medical policy. This is a corporate policy. It's got no author to it. It's never been published. It's never been peer-reviewed. And they're calling this a medical policy? And it's not just for systemic sclerosis. They're saying they don't cover stem cell transport for any of these kinds of diseases, all six. So it's not like they drilled down for systemic sclerosis. In the Parsons case, I was part of the Parsons case when it was at the trial court, not on appeal, but at the trial court. It was for Crohn's disease. It wasn't for systemic sclerosis. And it wasn't a ERISA case. Parsons was covered under a religious St. V's hospital program, and it wasn't an ERISA case. The standard of review. We have cited the record that says that while initial authority is given to Blue Cross Blue Shield, Stallion maintains final authority. They never exercised it. In fact, it's very, very doubtful whether Blue Cross Blue Shield exercised any discretion. Why? I mean, remember, they rejected Lana's claim the first day it was presented. It was presented on one day, they declined it the same day, based on this medical policy. That's not using discretion. That's a deemed denied sort of thing, which this court in Jabian said you can't do. That's not entitled to discretion. When you just say, well, we have this policy that says none of it's covered, we don't care what your circumstances are, we're just going to deny it. That's not discretion. I don't know if the court has any questions. I have nothing further. If you have any questions, Judge, I could. I have no questions here. Thank you. Thank you, Mr. Ernst. I want to thank all three counsel for excellent arguments and excellent briefing. It's a very difficult case and an important case, so we'll now take it under advisement. This Robertson v. Blue Cross is submitted and we'll turn to the next case on our topic.
judges: Goodwin, Gould, Ikuta